UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROBIN LYNN JACKSON,                 Civil Action No.: 17-12575
                                    Honorable Victoria A. Roberts
                    Plaintiff,      Magistrate Judge Elizabeth A. Stafford

v.

COMMISSIONER OF
SOCIAL SECURITY,

                    Defendant.

_____/

## REPORT AND RECOMMENDATION ON CROSS-MOTIONS FOR SUMMARY JUDGMENT [ECF NOS. 17, 22]

Plaintiff Robin Lynn Jackson appeals the final decision of defendant

Commissioner of Social Security (Commissioner), which denied her

application for Supplemental Security Income benefits (SSI) under the

Social Security Act.  Both parties have filed summary judgment motions,

referred to this Court for a report and recommendation pursuant to 28

U.S.C. § 636(b)(1)(B).  For the reasons stated below, the Court

**RECOMMENDS** that:

- Jackson's motion [ECF No. 17] be **GRANTED**;

- the Commissioner's motion [ECF No. 22] be **DENIED**; and

- this matter be **REMANDED** for further proceedings pursuant to

sentence four of 42 U.S.C. § 405(g).

I.     **BACKGROUND**

A.     **Jackson's Background and Disability Applications**

Born August 5, 1969, Jackson was 44 years old, which is described as a younger individual age 18-49, on the date the application was filed. [ECF No. 11-2, Tr. 22].  Jackson has a high school education, has prior work history as a caregiver, and also testified that she showed dogs.  [*Id.*] She alleges a disability due mainly to grand mal seizures, major depressive disorder, hepatitis C, seizure disorder, degenerative disk disease, panic attacks, and sleeping disorder.  [ECF No. 11-3, Tr. 68-69].

After a hearing on April 20, 2016, during which Jackson and a vocational expert (VE) testified, the ALJ found that Jackson had not been under a disability since February 19, 2014, the date the application was filed.  [ECF No. 11-2, Tr. 23].  The Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner.  [ECF No. 11-2, Tr. 1-5].  Jackson timely filed for judicial review.  [ECF No. 1].

B.     **The ALJ's Application of the Disability Framework Analysis**

A "disability" is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or

2

can be expected to last for a continuous period of not less than 12 months."
42 U.S.C. § 1382c(a)(3)(A).

The Commissioner determines whether an applicant is disabled by
analyzing five sequential steps. First, if the applicant is "doing substantial
gainful activity," he or she will be found not disabled. 20 C.F.R. §
416.920(a)(4). Second, if the claimant has not had a severe impairment or
a combination of such impairments[1] for a continuous period of at least 12
months, no disability will be found. *Id.* Third, if the claimant's severe
impairments meet or equal the criteria of an impairment set forth in the
Commissioner's Listing of Impairments, the claimant will be found disabled.
*Id.* If the fourth step is reached, the Commissioner considers its
assessment of the claimant's residual functional capacity ("RFC"), and will
find the claimant not disabled if he or she can still do past relevant work.
*Id.* At the final step, the Commissioner reviews the claimant's RFC, age,
education and work experiences, and determines whether the claimant
could adjust to other work. *Id.* The claimant bears the burden of proof
throughout the first four steps, but the burden shifts to the Commissioner if

---

[1] A severe impairment is one that "significantly limits [the claimant's]
physical or mental ability to do basic work activities." § 1520(c).

3

the fifth step is reached.  *Preslar v. Sec'y of Health & Human Servs.*, 14

F.3d 1107, 1110 (6th Cir. 1994).

Applying this framework, the ALJ concluded that Jackson was not

disabled.  [ECF No. 11-2, Tr. 23].  At the first step, she found that Jackson

had not engaged in substantial gainful activity since February 19, 2014, the

application date.  [ECF No.11-2, Tr. 13].  At the second step, she found that

Jackson had the severe impairments of atonic colon, status/post

colectomy, degenerative disc disease (DDD), hepatitis C, seizure disorder,

depression, anxiety, and drug/alcohol dependence.  *Id.*  Next, the ALJ

concluded that none of Jackson's impairments, either alone or in

combination, met or medically equaled the severity of a listed impairment.

*Id.*

Between the third and fourth steps, the ALJ found that Jackson had

the RFC to perform light work² that also permitted her to:

---

² The regulations define "light work" as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time."  20 C.F.R. §§ 404.1567(b) and 416.967(b).

- Sit, stand and walk up to the exertional limits, with the opportunity to shift between positions every 15 minutes;

- Never be exposed to workplace hazards (narrow, slippery, or erratically moving platforms; ropes, ladders, or scaffolding; unprotected heights; and hazardous machinery, including motor vehicles);

- Only occasionally turn the neck more than 45 degrees right or left;

- Engage in simple, routine tasks, defined as those generally mastered within 30 days, that are also goal-oriented, rather than production-paced;

- Engage in routine and predictable work, defined as that with no change in the general nature of the tasks to be performed or to the work setting;

- Engage in occasional interaction with co-workers and supervisors, but in only brief, superficial contact with the public; and

- Be off-task 10-15% of the workday, in addition to regular break and meal periods.

[ECF No. 11-2, Tr. 15].  At step four, the ALJ found that Jackson was not capable of performing her past relevant work as a caregiver.  [*Id.*, Tr. 21-22].  At the final step, after considering Jackson's age, education, work experience, RFC, and the testimony of the VE, the ALJ determined that there were jobs that existed in significant numbers that Jackson could perform, including positions as assembler, inspector, and packager.  [*Id.*, Tr. 22-23].  As such, the ALJ concluded that Jackson had not been under a

5

disability since February 19, 2014, the date the application was filed.  [*Id.*, Tr. 23].

## II.   ANALYSIS

Pursuant to § 405(g), this Court's review is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made in conformity with proper legal standards.  *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014).  Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotation marks and citation omitted).  Only the evidence in the record below may be considered when determining whether the ALJ's decision is supported by substantial evidence.  *Bass v. McMahon*, 499 F.3d 506, 513 (6th Cir. 2007).

Jackson argues that the ALJ improperly weighed the opinion evidence, giving the least weight to her treating psychiatrist, thereby rendering an RFC that is not supported by substantial evidence and is inconsistent with applicable regulations and rulings.  Jackson also contends that the ALJ erred when she failed to take into account the deterioration in her condition following an August 2015 colon surgery.  For the reasons that

6

follow, the Court concludes that the ALJ violated the treating physician rule
and that she failed to cite to evidence in the record supporting her
conclusions, thus precluding meaningful review.

## A.

Jackson first contends that the ALJ failed to properly evaluate the
opinion evidence, and improperly gave the least weight to the opinion of
her treating psychiatrist, Fariha Qadir, M.D.  The "treating physician rule"
requires an ALJ to give controlling weight to a treating physician's opinions
regarding the nature and severity of a claimant's condition when those
opinions are well-supported by medically acceptable clinical and diagnostic
evidence, and not inconsistent with other substantial evidence.  *Gentry*,
741 F.3d at 723, 727-29; *Rogers*, 486 F.3d at 242-43.  "Even when not
controlling, however, the ALJ must consider certain factors, including the
length, frequency, nature, and extent of the treatment relationship; the
supportability of the physician's conclusions; the specialization of the
physician; and any other relevant factors," and give appropriate weight to
the opinion.  *Gentry*, 741 F.3d at 723.  In all cases, a treating physician's
opinion is entitled to great deference.  *Id.*  An ALJ who decides to give less
than controlling weight to a treating physician's opinion must give "good
reasons" for doing so, in order to "make clear to any subsequent reviewers

7

the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Rogers*, 486 F.3d at 242 (quoting SSR 96-2p, 1996 WL 374188, at *5 (1996)).

Here, Dr. Qadir completed a mental RFC assessment in April 2016, almost two and one-half years after Jackson began treatment at Easter Seals.  [ECF No. 11-9, Tr. 559-62; ECF No. 11-10, Tr. 721-28, 729-36, 747-54, 755-63, 771-78].  In the assessment, Dr. Qadir indicated that Jackson's diagnosis was bipolar I disorder, with the most recent episode being mixed-moderate.  [ECF No. 11-9, Tr. 559].  She noted that Jackson had economic, occupational, housing, social, and environmental problems, and that her global assessment of functioning (GAF) scores ranged from 49 to 55.[3]  *Id.*  Dr. Qadir also indicated that Jackson was suffering from physical medical conditions that may contribute to her mental impairments, including hepatitis C, stomach ulcers, pain, and trouble with her digestive system.  *Id.*

---

[3] "The GAF scale is a method of considering psychological, social, and occupational function on a hypothetical continuum of mental health. The GAF scale ranges from 0 to 100, with serious impairment in functioning at a score of 50 or below. Scores between 51 and 60 represent moderate symptoms or a moderate difficulty in social, occupational, or school functioning." *Norris v. Comm'r of Soc. Sec.,* No. 11–5424, 461 F. App'x 433, 436 n. 1 (6th Cir. 2012) (citations omitted).

Dr. Qadir assessed Jackson's functioning in several areas, assuming that the activities must be performed on a regular and continuous basis (40 hours per week).  With respect to understanding and memory, Dr. Qadir concluded that Jackson was *markedly*[4] limited in her ability to remember locations and work-like procedures, and to understand and remember very short and simple instructions.  [ECF No. 11-9, 560].  Jackson was *extremely*[5] limited in her ability to understand and remember detailed instructions.  *Id.*  In assessing Jackson's sustained concentration and persistence, Dr. Qadir concluded that she was *markedly* limited in her ability to carry out very short and simple instructions, and in her ability to sustain an ordinary routine without special supervision.  [ECF No. 11-9, Tr. 560-61].

Jackson was *extremely* limited in her ability to carry out detailed instructions; to maintain attention and concentration for extended periods; to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; to work in coordination or proximity to others without being distracted by them; to complete a normal workday

---

[4]  The mental RFC defined "marked" as "the ability to function in this area would be limited about 50% of the time."  [ECF No. 11-9, Tr. 560].
[5]  The mental RFC defined "extreme" as "the ability to function in this area would be limited the majority of the time."  [ECF No. 11-9, Tr. 560].

and workweek without interruptions from psychologically based symptoms; and to perform at a consistent pace without an unreasonable number and length of rest periods.  [ECF No. 11-9, Tr. 560-61].

Jackson had *marked* limitations in almost every area of social interaction, including her ability to interact appropriately with the general public, to ask simple questions and request assistance, to accept instructions and respond appropriately to criticism from supervisors, to maintain socially appropriate behavior, and to adhere to basic standards of neatness and cleanliness.  [ECF No. 11-9, Tr. 561].  According to Dr. Qadir, Jackson was also *extremely* limited in her ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes.  *Id.*  With respect to adaptation, Dr. Qadir concluded that Jackson was *markedly* limited in her ability to be aware of normal hazards and take appropriate precautions, to travel to unfamiliar places or use public transportation, and to set realistic goals or make plans independently of others.  [ECF No. 11-9, Tr. 562].  Jackson was also *extremely* limited in her ability to respond appropriately to changes in the work setting, and to tolerate normal levels of stress.  *Id.*

In giving "limited weight" to Dr. Qadir's mental RFC assessment, the ALJ concluded that "her opinion is unsupported by her own treatment

records at exhibits 7F and 23F, and by the objective medical evidence of record including independent consultative examinations."  [ECF No. 11-2, Tr. 19].  That one sentence is the ALJ's entire statement of her reasons for giving limited weight to Dr. Qadir's opinions.  The exhibits noted by the ALJ total consist of 167 pages of treatment notes from Easter Seals, and the ALJ does not identify any specific record within those pages that contradicts Dr. Qadir's mental RFC.

The Commissioner provides an analysis of the record in an attempt to support the ALJ's conclusory reasoning.  [ECF No. 22, PageID.933-35].  But the Sixth Circuit has emphasized that "[i]n reviewing an ALJ's findings and conclusions, this Court shall not accept appellate counsel's *post hoc* rationalization for agency action in lieu of accurate reasons and findings enunciated by the Board."  *Keeton v. Comm'r of Soc. Sec.*, 583 F. App'x 515, 524 (6th Cir. 2014) (internal quotation marks, brackets, and citation omitted).  And when it comes to the treating physician rule, an ALJ is required to "articulate" the "good reasons," and courts will not hesitate to remand when an ALJ fails to do so.  *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 545 (6th Cir. 2004).  This procedural safeguard permits "meaningful appellate review," and ensures that claimants "understand the disposition of their cases."  *Rogers*, 486 F.3d at 242-43 (internal quotation

11

marks and citation omitted).  Here, the ALJ's citation to a large swath of the record did not ensure that Jackson understood the disposition of her case, and renders it impossible for the Court to conduct a meaningful review.

Generally, the opinions of examining physicians are given more weight than those of non-examining sources, and the opinions of treating physicians are given more weight than a one-time examiner.  *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 375 (6th Cir. 2013) (citing 20 C.F.R. §§ 404.1502, 404.1527(c)).  But here, the ALJ afforded more weight to opinions of non-treating doctors that she did to Qadir's opinion, and her reasoning for doing so was not sufficient.

The ALJ afforded "great weight" to a portion of the opinion of consultative psychological examiner Terrance Mills, Ph.D., L.P.[6]  [ECF No. 11-2, Tr. 20].  He diagnosed Jackson with major depressive disorder, generalized anxiety disorder, panic disorder, opioid use disorder, moderate in early remission, and alcohol use disorder, moderate in early remission. [ECF No. 11-8, Tr. 511].  Dr. Mills opined that Jackson appeared able to manage her own benefit funds, "based on today's evaluation," and that she did not appear to have difficultly carrying out one-step instructions.  [*Id.*]  He noted that Jackson claimed difficultly with depressive episodes and issues

---

[6]  The psychological assessment is co-signed by Sandra Coutu, L.L.P.

related to anxiousness, and concluded that Jackson did not appear able to maintain standards of behavior and safety issues due to both medical and psychological issues.  [*Id.*].

The ALJ gave Dr. Mills' opinion great weight to the extent that Jackson is able to manage her own funds and carry out one-step instructions.  [ECF No. 11-2, Tr. 20].  The ALJ indicated that these findings were "consistent with the objective medical evidence as a whole at exhibits 1F-8F, 13F-17F, and 19F-23F."  [*Id.*, citing all of ECF Nos. 11-7 through11-10].  In other words, the ALJ cited to all 572 pages of the medical record without identifying any specific objective findings to support giving great weight to that portion of Dr. Mills' opinion.

The ALJ then gave limited weight to the portion of Dr. Mills' opinion stating that Jackson is unable to maintain standards of behavior and safety due to medical and psychological issues, reasoning that "there is no rationale for the opinion contained in the objective medical evidence of record."  [*Id.*]  Again, the ALJ relied on the entire medical record, without citing any specific portions thereof, to give limited weight to that portion of Dr. Mills' opinion.  Moreover, the record showed that Dr. Qadir had found Jackson to be markedly limited in her ability to be aware of normal hazards and take appropriate precautions.  [ECF No. 11-9, Tr. 562].  And Dr.

13

Qadir's observations and opinions are the type of clinical data that is

relevant for assessing Jackson's mental health.

> [W]hen mental illness is the basis of a disability claim, clinical
> and laboratory data may consist of the diagnosis and
> observations of professionals trained in the field of
> psychopathology. The report of a psychiatrist should not be
> rejected simply because of the relative imprecision of the
> psychiatric methodology or the absence of substantial
> documentation, unless there are other reasons to question the
> diagnostic techniques.

*Blankenship v. Bowen*, 874 F.2d 1116, 1121 (6th Cir.1989) (citations and

internal quotation marks omitted).  In short, contrary to the ALJ's statement

otherwise, there was evidence in the record to support Dr. Mills' opinion

that Jackson is unable to maintain standards of behavior and safety due to

medical and psychological issues

The ALJ also purportedly gave "great weight" to the opinion of

Thomas T.L. Tsai, M.D., the non-examining State agency psychological

consultant.  [ECF No. 11-2, 21; ECF No. 11-3, Tr. 68-80].  The ALJ

reasoned that Dr. Tsai's assessment was "well supported by the objective

medical evidence of record including treatment records from psychological

sources, findings of consultative examiners at exhibits 10F and 11F, and

the adopted residual functional capacity."  [ECF No. 11-2, Tr. 21, citing

ECF No. 11-8, Tr. 508-521].  The Court agrees with Jackson that the RFC

is a *finding*, not evidence that can be used to provide support for Dr. Tsai's

14

opinion. *See* 20 C.F.R. 404.1527(d)(2). And as discussed above, the ALJ failed to explain her reasons for the weight given to Dr. Mills' opinion, and she failed to articulate why she gave greater weight to the opinion of Dr. Mills than to that of Dr. Qadir, a treating physician. The ALJ's decision to give greater weight to both the opinions of a non-examiner and a non-treating consultant than to Dr. Qadir's opinion is inconsistent with the general rule that treating physician's opinions are given greater weight than opinions from non-examining sources. *Gayheart,* 710 F.3d at 375.

"The treating physician rule occupies a special place in social security cases." *Rabbers*, 582 F.3d at 656. This is because "treating physicians are 'likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations.'" *Id.* (quoting 20 C.F.R. § 404.1527(d)(2)). Because of its special place, a violation of the "good reasons" rule is harmless only if "(1) a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it; (2) if the Commissioner adopts the opinion of the treating source or makes findings consistent with the opinion; or (3) where the Commissioner has met the goal of § 1527(d)(2) ... even though

15

she has not complied with the terms of the regulation." *Cole*, 661 F.3d at 940 (internal quotations marks and citations omitted).

Dr. Qadir is a quintessential treating physician whose longitudinal picture brings a unique perspective that cannot be obtained from objective medical records alone or from consultative examiners. The Commissioner has not met the goal of Section 1527(d)(2) because the ALJ did not specifically identify any treatment notes or other evidence that undermined Dr. Qadir's opinion, or otherwise articulate good reasons for giving only limited weight to Dr. Qadir's opinion. And even if this Court considered the Commissioner's analysis, it would still find that Dr. Qadir's opinion was not so patently deficient that it could not be accepted.

For these reasons, the Court recommends that this matter be remanded for reconsideration of the weight given to Dr. Qadir's and Dr. Mills' opinions, including their similar conclusions that Jackson was incapable of maintaining standards of behavior and safety. To the extent that the ALJ still does not fully credit those doctors' opinions, she should be required to articulate her reasoning and reference specific evidence in the record.

**B.**

Jackson also argues that the ALJ failed to account for the deterioration in her condition following her August 2015 colon surgery.  The ALJ acknowledged that, in July 2015, Jackson had a colonoscopy with biopsy polypectomy after presenting with constipation.  [ECF No. 11-2, Tr. 17-18].  After a colon transit study, Jackson was diagnosed with an atonic colon and had surgery in August 2015.  [ECF No. 11-9, 589-96].  Citing to the 111 pages in exhibits 21F and 22F of the transcript, the ALJ stated that, after her surgery, Jackson complained of bowel urgency and experienced drainage of an ischiorectal abscess, but that she "was instructed to return to a regular diet and resume normal activities."  [ECF No. 11-2, Tr. 18].  The Court is again unsure of the specific records upon which the ALJ relied to derive this conclusion, but what is clear is that the ALJ's decision does not address evidence in the record indicating that Jackson suffered complications post-surgery.

Jackson testified that she required bathroom breaks six-to-ten times per day, and needed to bathe after almost every bowel movement due to "uncontrollable diarrhea."  [ECF No. 11-2, Tr. 39].  These issues were compounded by open abscesses on her buttocks and an ongoing diagnosis of Hepatitis C.  [ECF No. 11-2, Tr. 39-40, 54-56].  Jackson also said that

17

she experienced increased depression following her surgery, including increased anxiety, sadness, and fatigue.  [ECF No. 11-2, Tr. 40].  Follow-up treatment notes seem to corroborate Jackson's testimony in this regard.

A psychiatric note from August 2015 states that Jackson was feeling helpless and hopeless because she had watery stools and diarrhea all of the time and could not do much.  [ECF No. 11-9, Tr. 578].  Jackson complained in September 2015 that she had continuous diarrhea and increasing depression.  [*Id.*, Tr. 653].  She stated that she had bowel movements about six times and day, and that Imodium was not controlling the diarrhea.  [*Id.*].  Jackson reported vomiting and diarrhea, with loose stool five times a day, in March 2016.  [*Id.*, Tr. 672-74].  Another report the same month identified diarrhea on Jackson's "problem list."  [*Id.*, Tr. 691].[7]

The ALJ's decision did not discuss plaintiff's testimony or these medical records, and did not address how Jackson's allegations of frequent diarrhea affected her RFC.  During the hearing, the VE testified that needing to take more than two, five-minutes breaks in the morning and two more in the afternoon would be work-preclusive.  [ECF No. 11-2, Tr. 62].

_____

[7] The ALJ gave great weight to the opinion of Florence Thomas, M.D., who performed a consultative examination in July 2014, but that was more than a year before Jackson's surgery and the subsequent development of frequent diarrhea.  [ECF No. 11-2, Tr. 19].

The ALJ's failure to provide a more thorough evaluation of Jackson's testimony and post-surgery records precludes meaningful review. She should be ordered to address, on remand, Jackson's allegation of frequent diarrhea and depression, and their effects on her RFC.

### III.  CONCLUSION

For the reasons stated above, the Court **RECOMMENDS** that Jackson's motion [ECF No. 17] be **GRANTED**; that the Commissioner's motion [ECF No. 22] be **DENIED;** and that this matter be **REMANDED** for further consideration pursuant to sentence four of 42 U.S.C. § 405(g).

s/Elizabeth A. Stafford
ELIZABETH A. STAFFORD
United States Magistrate Judge

Dated: August 8, 2018

### NOTICE TO THE PARTIES REGARDING OBJECTIONS

Either party to this action may object to and seek review of this Report and Recommendation, but must act within fourteen days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505 (6th Cir. 1991)*; United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that party

might have to this Report and Recommendation.  *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  A copy of any objection must be served upon this Magistrate Judge.  E.D. Mich. LR 72.1(d)(2).

Each **objection must be labeled** as "Objection #1," "Objection #2," etc., and **must specify** precisely the provision of this Report and Recommendation to which it pertains.  Not later than fourteen days after service of objections, **the non-objecting party must file a response** to the objections, specifically addressing each issue raised in the objections in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc.  The response must be **concise and proportionate in length and complexity to the objections**, but there is otherwise no page limitation.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on August 8, 2018.

s/Marlena Williams
MARLENA WILLIAMS
Case Manager